UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHNNA THOMAS ) | CASE NO.  5:14CV1474 |
| ) | |
| Plaintiff ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| v. ) | |
| ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION ) | |
| ) | |
| ) | |
| Defendant. ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Johnna Thomas Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her August 21, 2013 decision in finding that Plaintiff was not disabled because she could perform a range of light work that exists in significant numbers in the national economy (Tr. 18-32).   The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I.   PROCEDURAL HISTORY

Plaintiff, Johnna Thomas, filed her application for DIB and SSI on July 22, 2011,  alleging she became disabled on January 31, 2009 due to depression, bipolar disorder, back problems, and thyroid problems (Tr. 87-94).  Plaintiff's application was denied initially and on reconsideration (Tr. 39-41,

1

43-45). Plaintiff requested a hearing before an ALJ, and, on July 2, 2013, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ, and Ted Macy, a vocational expert (VE), also testified (Tr. 463-469).

On August 21, 2013, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 18-32). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 7, 13). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Sections 405(g) and 1383(c)(3).

## II. STATEMENT OF FACTS

Plaintiff was born on January 9, 1968, which made her forty-one years old as of the alleged onset date, and was considered a younger individual at all relevant times (Tr. 30). Plaintiff has a high school education and one year of college, and past work experience as a stocker, construction worker, nursing assistant, production worker, furnace helper, and specialist in an assisted living center (Tr. 30, 112, 157, 463-470).

## III. SUMMARY OF MEDICAL EVIDENCE

Between 2006 and 2008, Plaintiff was seen regularly for neck and back complaints (Tr. 231-237). She did not seek care during the period from her onset date of January 31, 2009 to July 2010, until July 21, 2010, when she saw primary care physician Jean Dib, M.D. as a new patient, to request refills of Paxil and Ambien (Tr. 203).

In January 2011, Dr. Dib noted Plaintiff had been in a car accident, but did not see the neurologist that Dr. Dib had referred her to, and claimed to have memory problems (Tr. 191-192).

Dr. Dib noted her noncompliance (Tr. 192).

Back or neck complaints were reported to Dr. Dib on May 2011, when Plaintiff stated that she was taking Percocet for low back pain and wanted a muscle relaxant as well (Tr. 187). Dr. Dib prescribed Percocet for headaches and Flexeril. He noted no erythema or swelling in the lower extremities (Tr. 203). Dr. Dib renewed the Flexeril prescription form May 2011 to March 2012 (Tr. 184-186, 337-338, 388-393). His examinations indicated limited range of motion in the cervical spine and lumbosacral tenderness, but no neurological deficits, such as decreased motor strength, or deficits in sensation or reflexes (Tr. 184, 186, 338, 390). In March 2012, Dr. Dib would issue one more month of pain medications (Tr. 390). Plaintiff also had thyroid problems, which were brought to normal levels with medication (Tr. 437). She had Type II diabetes, that Dr. Dib noted to be controlled with medication (Tr. 336, 406).

In October 2011, Plaintiff saw spinal specialist Augusto Hsia, M.D. (Tr. 258). He noted Plaintiff's complaints of pain in her neck, but she denied radiating pain (Tr. 258). On examination, Dr. Hsia observed decreased range of motion in the cervical spine, as well as diminished abduction of the shoulders (Tr. 260). She had normal gait, reflexes, motor strength, and sensation in her upper and lower extremities (Tr. 261). Dr. Hsia noted a July 2011 MRI study of the cervical spine, which indicated central disc bulge at C3-4 without significant spinal canal narrowing, and minimal disc bulge at C2-3 and C4-5 and C5-6 (Tr. 259). His diagnostic impression was myofascial spine pain, and he did not recommend surgery (Tr. 261). He, instead, recommended Cymbalta or Savella, and referred her to physical therapy for back range of motion, strengthening, and stretching (Tr. 261). Dr. Hsia also had a discussion with Plaintiff about a multi-disciplinary pain rehabilitation program (Tr. 261).

3

Plaintiff also underwent several imaging studies. A computerized tomography (CT) scan of the cervical spine in January 2011 indicated an unremarkable study (Tr. 227). A July 2011 MRI study of the cervical spine showed central disc bulge at C3-4 without significant spinal canal narrowing, and minimal disc bulge at C2-3 and C4-5 and C5-6 (Tr. 259). A March 2012 MRI study of the lumbar spine revealed mild degenerative changes at L5-S1, but no disc space narrowing, canal stenosis, or foraminal narrowing (Tr. 435).

Plaintiff saw a chiropractor twice in January 2012 (Tr. 299).

In May 2012, state reviewing physician Leigh Thomas M.D. reviewed the medical evidence, and affirmed an earlier state physician's opinion that Plaintiff could perform a full range of light work (Tr. 291-294, 362).

In July 2012, Dr. Dib opined that Plaintiff could lift up to five pounds, stand/walk no more than thirty minutes in an eight-hour workday, and sit for up to one hour (Tr. 373-374). He additionally opined that Plaintiff could rarely push or pull, and could only occasionally perform fine or gross manipulation (Tr. 374).

As to mental health issues, Plaintiff underwent a psychological examination with Michael Harvan, Ph.D. in January 2010, at the state agency's request (Tr. 159-164). On examination, Dr. Harvan noted mildly depressed mood and no motor manifestations of anxiety (Tr. 161). Plaintiff was oriented to person, place, and situation, and demonstrated ability to focus attention and concentration in testing (Tr. 162). She reported activities that included waking her son in the morning, watching television, cooking dinner, shopping for groceries, sometimes washing dishes, doing laundry, and visiting with relatives, and she went to church regularly (Tr. 163). Dr. Harvan stated a diagnostic impression of major depressive disorder (Tr. 164). He concluded that Plaintiff's ability to understand and follow instructions and maintain attention for simple or multi-step tasks instructions was mildly

4

impaired (Tr. 164). He opined that she was mildly impaired in social functioning and in her ability to withstand pressure and stress (Tr. 164). He examined her again in April 2012, and concluded that she had no more than moderate limitations in understanding, remembering, and carrying out instructions, maintaining attention, concentration, persistence, or pace, responding appropriately to co-workers and supervisors, and responding to work pressures (Tr. 352-360).

Plaintiff saw Dr. Dib in July 2010 to begin treatment for symptoms of depression, anxiety, and insomnia (Tr. 203). Dr. Dib stated diagnostic impressions of insomnia and generalized anxiety disorder, and prescribed psychotropic medications, including Paxil, Ambien, and Valium (Tr. 203).

In March 2012, Plaintiff underwent initial psychiatric assessment by Sharon Hoopingarner, a clinical nurse specialist, who noted a history of depression, and recent symptoms of suicidal ideation, poor sleep, and low energy (Tr. 370). On examination, Ms. Hoopingarner noted she was of average intellect (Tr. 371). She stated a diagnostic impression of schizoaffective disorder with psychotic symptoms, and generalized anxiety disorder, and recommended continuing on Paxil, as well as starting Invega (Tr. 371). In progress notes, Ms. Hoopingarner noted periods of non-compliance with medication (Tr. 368, 413-415). Plaintiff improved when she took her medication (Tr. 367, 416-417).

In June 2012, Nurse Hoopingarner opined that Plaintiff's response to medications was good, and that her ability to understand, remember, and follow direction, as well as sustain concentration, persistence, and pace, were unremarkable (Tr. 364-366). However, Plaintiff was easily distracted, in the nurse's estimation, and had poor capacities for social interaction, adaptation, and stress tolerance (Tr. 365). In June 2013, Nurse Hoopingarner opined that Plaintiff had "rare" ability to perform work-related functions, such as following work rules, maintaining concentration, persistence, or pace, and carrying out complex job instructions (Tr. 439-440).

In July 2012, Dr. Dib opined that Plaintiff had poor ability to follow work rules, deal with the public, relate to co-workers, function independently without supervision, deal with work stress, and complete a workday/workweek without interruption from psychological symptoms (Tr. 375-376). Dr. Dib also opined that Plaintiff had fair ability to maintain attention and concentration, understand, remember and carry out even complex instructions, and relate predictably in social situations (Tr. 375-376).

In December 2012, state reviewing psychiatrist Paul Tangeman, Ph.D. reviewed the medical evidence, and opined that Plaintiff's mental impairments resulted in moderate restriction of her social functioning and ability to maintain concentration, persistence, or pace (Tr. 282). Dr. Tangeman opined that Plaintiff could perform simple to moderately complex tasks in a static environment with superficial, occasional contact with co-workers and the public (Tr. 288-289).

### IV. SUMMARY OF TESTIMONY

Plaintiff testified at the hearing that she lived with her husband and brother-in-law (Tr. 457). She no longer drove, due to a suspended license after she drove without insurance (Tr. 457-458). Plaintiff testified that she had a prior problem with alcohol and crack cocaine, having last used crack cocaine close to two years prior to the hearing (Tr. 459). She alleged that she had not consumed alcohol for eight to twelve months (Tr. 459).

She stated that she had been in several car accidents (Tr. 455). She claimed to have neck and back pain, as well as depression, that prevented her from working (Tr. 450). Plaintiff alleged that her back pain was six out of ten (Tr. 462). Prior treatment included chiropractic support and a muscle relaxant (Flexeril), but no surgery (Tr. 451). She testified that she was evaluated at Cleveland Clinic, and surgery was not recommended (Tr. 451). She stated that Flexeril helped reduce the muscle pain,

6

and made it easier for her to move (Tr. 451). She also took Ibuprofen (Tr. 462). She stated that she could walk less than a block, and also had trouble sitting or standing (Tr. 452). Plaintiff alleged that she could only lift her arms to shoulder level (Tr. 453-454). Plaintiff estimated that she could lift up to ten pounds (Tr. 454).

Plaintiff also stated she was seeing a counselor for treatment of depression once a week, and had been doing so for the past year (Tr. 455-456). A nurse practitioner prescribed Invaga and Paxil (Tr. 456). She went to the store on occasion, and received visits at home (Tr. 458). She spoke to her mother once a day by phone (Tr. 458). Plaintiff cooked, shopped for groceries, did laundry, and watched television (Tr. 463).

Thereafter, the VE testified at the hearing (Tr. 463). The ALJ posed a hypothetical question to the VE, assuming an individual of Plaintiff's age, education, and vocational background, who could perform light work involving simple, routine, repetitive tasks that could be learned in thirty days or less (Tr. 466). Additionally, the individual required a low stress, relatively static work environment, which precluded tasks that involved high production quotas, such as piecework or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing the work of others, or being responsible for others' safety (Tr. 466).

The VE testified that such an individual could perform the jobs of wire worker (750 regional jobs, 105,000 jobs nationally); electronics worker (450 regional jobs, 60,000 jobs nationally); and assembly press operator (405 regional jobs, 105,00 nationally) (Tr. 467).

## V.     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## **VI.** **STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to

8

any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VII.    ANALYSIS**

Plaintiff raises one issue for review:

A.  WHETHER THE ALJ VIOLATED THE TREATING PHYSICIAN RULE WHEN EVALUATING THE FINDINGS AND OPINION OF DR. DIB.

Based on the ALJ's review of the evidence of record and hearing testimony, the ALJ concluded in her decision that Plaintiff remained capable of performing light work (Tr. 22). The ALJ also added mental limitations, finding Plaintiff was limited to simple, routine, repetitive tasks that could be learned in thirty days or less, in a relatively static environment, and that were low stress (preclusive of work involving high production quotas, such as piecework or assembly line work), free of strict production quotas, and did not involve arbitration, negotiation, or confrontation, directing others, or

9

being responsible for others' safety or welfare (Tr. 23).  Furthermore, the ALJ limited Plaintiff to superficial interaction with co-workers and the public (Tr. 23). The ALJ concluded, based on the VE's testimony, that Plaintiff, despite her impairments, could perform a significant number of other jobs, and, therefore, was not disabled under the Act (Tr. 30-31).

Plaintiff argues that the ALJ's RFC finding failed to account for all of her limitations, and, particularly, not deferring to the opinions of treating physician, Dr. Dib (Pl.'s Br. at 11-14).  However, based upon substantial evidence the ALJ correctly reviewed, her RFC finding, and her conclusions were correct.

The opinion of a treating source is entitled to controlling weight only when it is supported by medically acceptable clinical and laboratory diagnostic results, and it is not inconsistent with other objective evidence.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. Section 404.1527(d)(2).  When the ALJ does not give controlling weight to a treating physician's opinion, he or she should explain what weight he or she assigned it after considering: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) the relevant evidence that the treating physician relies upon; (4) the consistency of the opinion with the record as a whole; and (5) specialization of the treating physician. 20 C.F.R. Section 404.1527(d)(1)-(5).

In this case, the ALJ assigned little weight to treating physician Dr. Dib's July 2012 opinion, in which he opined that Plaintiff could lift up to five pounds, stand/walk no more than thirty minutes in an eight-hour workday, and sit for up to one hour (Tr. 373-374). Dr. Dib also opined that Plaintiff could rarely push or pull, and could only occasionally perform fine or gross manipulation (Tr. 27, 374). In addition, Dr. Dib opined that Plaintiff had poor ability to follow work rules, deal with the public, relate to co-workers, function independently without supervision, deal with work stress, and

complete a workday/workweek without interruption from psychological symptoms (Tr. 375-376). Dr. Dib further opined that Plaintiff had fair ability to maintain attention and concentration, understand, remember, and carry out even complex instructions, and relate predictably in social situations (Tr. 375-376).

The ALJ gave little weight to this opinion because he found that it was not supported by the medical evidence as a whole (Tr. 29). *See* 20 C.F.R. Sections 404.1527(d)(3), 416.927(d)(3). The ALJ correctly explained that Dr. Dib's conclusions were not supported by his clinical findings or his conservative treatment of Plaintiff (Tr. 27).

Furthermore, the ALJ noted that Dr. Dib based his conclusions on Plaintiff's degenerative disc disease in the cervical and lumbar spine (Tr. 27). However, Plaintiff did not report complaints of back or neck pain to Dr. Dib until May 2011, when Plaintiff stated that she had been taking Percocet for low back pain and wanted a muscle relaxant as well (Tr. 24, 187). Dr. Dib prescribed Percocet (for headaches) and Flexeril. He noted no erythema or swelling in the lower extremities (Tr. 203). Dr. Dib renewed the Flexeril prescription from May 2011 to March 2012 (Tr. 184-186, 337-338, 388-393). Based upon his examinations, he indicated limited range of motion in the cervical spine and lumbosacral tenderness, but no neurological deficits, such as decreased motor strength, or deficits in sensation or reflexes (Tr. 184, 186, 338, 390).

The ALJ also noted that Plaintiff was treated with muscle relaxants and pain medication, and was referred for physical therapy, but not surgery (Tr. 25).

Based upon the imaging studies, the ALJ noted that a computerized tomography (CT) scan of the cervical spine in January 2011 indicated an unremarkable study (Tr. 25, 227). She indicated that a July 2011 MRI study of the cervical spine showed a central disc bulge at C3-4 without significant spinal canal narrowing, and minimal disc bulge at C2-3 and C4-5 and C5-6 (Tr. 25, 259). A March

11

2012 MRI study of the lumbar spine indicated mild degenerative changes at L5-S1, but no disc space narrowing, canal stenosis, or foraminal narrowing (Tr. 25, 435).

In addition, the ALJ assigned little weight to Dr. Dib's opinion of mental limitations (Tr. 27). She noted that Dr. Dib had opined that Plaintiff could maintain concentration and attention, understand, remember, and carry out even complex instructions, and relate predictably in social situations (Tr. 27, 365).  The ALJ found this part of the opinion contradicted Dr. Dib's conclusion that Plaintiff had poor ability to follow work rules, deal with the public, relate to co-workers, function without supervision, and complete a workday or workweek without distraction from her mental symptoms (Tr. 27).  A majority of Dr. Dib's progress notes did not indicate any mental status examination findings, and many visits did not address Plaintiff's mental condition (Tr. 184-203). Dr. Dib also noted that Plaintiff's pain and anxiety symptoms were controlled with medications (Tr. 201, 364).  Furthermore, the ALJ noted progress notes, indicating that Plaintiff's mental symptoms were controlled or diminished in severity when she took her medications as prescribed (Tr. 27, 367, 416-417).

It is noted that the ALJ assigned substantial weight to state reviewing physician Dr. Thomas' opinion that Plaintiff could perform light work (Tr. 29, 362).  She also gave substantial weight to state reviewing psychiatrist Tangeman's opinion (Tr. 29, 282-289).  These opinions were based on review of the medical evidence, which the ALJ is entitled to rely upon in her decision.  Social Security Ruling 96-6p.

Furthermore, the ALJ assigned substantial weight to Dr. Harvan's April 2012 opinion of limitations, which was consistent with the examination findings of other mental health professionals (Tr. 29). Dr. Harvan concluded that Plaintiff had moderate limitations in understanding, remembering, and carrying out instructions, maintaining attention, concentration, persistence, or pace, responding

12

appropriately to co-workers and supervisors, and responding to work pressures (Tr. 352-360).

Also, the ALJ noted that Plaintiff had a wide array of activities that suggested greater capabilities than she claimed (Tr. 21). The ALJ discussed Plaintiff's ability to independently attend to personal care, perform routine household tasks, prepare meals, shop in stores, and manage her finances (Tr. 22, 163-164). Based upon substantial evidence, the ALJ correctly concluded that less weight should be assigned to Dr. Dib's opinion.

Relying upon a thorough review of all of the evidence, the ALJ established limitations in the RFC assessment. The Plaintiff has failed to fulfill her burden of proof in regard to her disability. 42 U.S.C. Section 423(d)(5)(A).

Since substantial evidence supports the ALJ's thorough evaluation of the evidence, the undersigned determines the ALJ's decision to be correct that Plaintiff was not disabled.

## VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform light work at jobs that exist in significant numbers in the national economy, and, therefore, was not disabled. Hence, she is not entitled to DIB and SSI.

Dated: March 18, 2015             */s/George J. Limbert*
                                  GEORGE J. LIMBERT
                                  UNITED STATES MAGISTRATE JUDGE